1–800 CONTACTS, INC.,
Plaintiff–Appellee,

v.

WHENU.COM, INC. and VISION DIRECT, INC., Defendants–Appellants.

Docket Nos. 04–0026–CV(L), 04–0446–CV(CON).

United States Court of Appeals, Second Circuit.

Argued April 5, 2004.

Decided June 27, 2005.

---

Terence P. Ross, Gibson, Dunn & Crutcher, L.L.P. (Rachel A. Clark, Prasanth R. Akkapeddi, and Amy E. Barrier, on the brief), Washington, DC, for Plaintiff–Appellee 1–800 Contacts, Inc.

Celia Goldwag Barenholtz, Kronish, Lieb, Weiner & Hellman (Michael D. Paley, Jason M. Koral, and Ian Ross Shapiro, on the brief), New York, NY, for Defendant–Appellant WhenU.Com, Inc.

Jeffrey E. Ostrow, Simpson Thacher & Bartlett LLP (Patrick E. King and Theodore J. McEvoy, on the brief), New York, NY, for Defendant–Appellant Vision Direct, Inc.

Mark A. Lemley, Keker & Van Nest, LLP, San Francisco, CA, for amicus curiae Google Inc. urging reversal of the district court.

Thomas C. Morrison, Christine H. Miller, Eden Doniger, Patterson, Belknap, Webb & Tyler LLP (Peter J. Brann, Kevin Beal, Brann & Isaacson, LLP; Daniel G. Clodfelter, Thomas E. Graham, Moore & Van Allen, PLLC; Richard R. Hays, David

J. Stewart, Alston & Bird, LLP; Jennifer G. Altman, Boies, Schiller & Flexner, LLP, of counsel), New York, NY, for amici curiae The Hertz Corporation, L.L. Bean, Inc., Lending Tree, Inc., Six Continents Hotels, Inc., Inter–Continental Hotels Corporation, and TigerDirect, Inc. in support of Plaintiff–Appellee 1–800 Contacts, Inc.

Professor Eric Goldman, Marquette University Law School, Milwaukee, WI; Cindy Cohn, Fred von Lohmann, Electronic Frontier Foundation, San Francisco, CA, for amicus curiae Electronic Frontier Foundation urging reversal of the district court.

Before: WALKER, Chief Judge, and STRAUB, Circuit Judge.[1]

JOHN M. WALKER, JR., Chief Judge.

Defendant-appellant WhenU.com, Inc. ("WhenU") is an internet marketing company that uses a proprietary software called "SaveNow" to monitor a computer user's internet activity in order to provide the computer user ("C-user") with advertising, in the form of "pop-up ads," that is relevant to that activity. Plaintiff-appellee

1–800 Contacts, Inc. ("1–800") is a distributor that sells contact lenses and related products by mail, telephone, and internet website. At the time 1–800 filed this action in the United States District Court for the Southern District of New York (Deborah A. Batts, *District Judge*), it owned a registered trademark in the service mark "WE DELIVER. YOU SAVE." and had filed applications with the United States Patent and Trademark Office on July 8, 1999, to register the service mark "1–800CONTACTS",[2] and on October 2, 2000, to register the service mark of "1–800CONTACTS" in a specific color-blocked design logo.[3]

1–800 filed a complaint alleging, *inter alia*,[4] that WhenU was infringing 1–800's trademarks, in violation of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a)(1), by causing pop-up ads of 1–800's competitors to appear on a C-user's desktop when the C-user has accessed 1–800's website. In an Opinion entered January 7, 2004, the district court granted 1–800's motion for a preliminary injunction as it related to 1–800's trademark claims,[5] and enjoined

---

1. The Honorable Ellsworth Van Graafeiland, of the United States Court of Appeals for the Second Circuit, was part of this panel, but passed away following oral argument. The appeal is being decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b).

2. 1–800 obtained registration for this service mark on January 21, 2003.

3. This service mark was described as follows: Applicant claims the colors yellow, blue and white as part of the mark. The box behind the word CONTACTS is yellow. The border around the yellow box behind the word CONTACTS is blue. The box behind the term "800" is blue. The number one and the word CONTACTS are written in blue. The term "800" is written in white.

4. In addition to the trademark claims, 1–800 asserts claims for (1) unfair competition, false

designation of origin, trademark dilution, and cybersquatting, in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125; (2) copyright infringement and contributory copyright infringement, in violation of the Federal Copyright Act, 17 U.S.C. §§ 101, *et seq.*; and (3) state law claims for trademark dilution and injury to business reputation, in violation of N.Y. Gen. Bus. L. § 360–1; and (4) common law claims for unfair competition and tortious interference with prospective economic advantage.

Several claims name Vision Direct, Inc., one of the 1–800 competitors whose advertisements were featured in WhenU's popup ads, as either defendant or co-defendant with WhenU.

5. The district court denied part of 1–800's motion, which related to 1–800's copyright claims.

WhenU from using or otherwise displaying 1–800's trademarks, or anything confusingly similar to such trademarks, in connection with WhenU's contextually relevant advertising. *1–800 Contacts, Inc. v. WhenU.com*, 309 F.Supp.2d 467 (S.D.N.Y. 2003) ("*1-800 Contacts*"). WhenU has filed this interlocutory appeal.[6]

We hold that, as a matter of law, WhenU does not "use" 1–800's trademarks within the meaning of the Lanham Act, 15 U.S.C. § 1127, when it (1) includes 1–800's website address, which is almost identical to 1–800's trademark, in an unpublished directory of terms that trigger delivery of WhenU's contextually relevant advertising to C-users; or (2) causes separate, branded pop-up ads to appear on a C-user's computer screen either above, below, or along the bottom edge of the 1–800 website window. Accordingly, we reverse the district court's entry of a preliminary injunction and remand with instructions to (1) dismiss with prejudice 1–800's trademark infringement claims against WhenU, and (2) proceed with 1–800's remaining claims.

## BACKGROUND

### I. The Internet and Windows

By way of introduction to this case we incorporate the district court's helpful tutorial on the internet and the Microsoft Windows operating environment as it pertains to this litigation:

The Internet is a global network of millions of interconnected computers.... [A C-user] can access ... information that is stored on the Internet in repositories called "servers." Much of the information stored in servers on the Internet can be viewed ... in the form of "webpages," which are collections of pictures and information, retrieved from the Internet and assembled on the [C-user]'s computer screen. "Websites" are collection[s] of [related] webpages that are organized and linked together to allow a [C-user] to move from webpage to webpage easily....

[A C-user] generally connects to the Internet using an internet service provider ("ISP")[10] ..., which allows the [C-user]'s computer to communicate with the Internet. Once a connection to the Internet has been established ..., a [C-user] may "browse" or "surf" the Internet by using a software program called an Internet browser ("browser"). Microsoft Internet Explorer is one example of a browser program.[11] ...

---

[10] Examples of ISPs include Earthlink, Verizon, NetZero, America Online.

[11] Other examples of browser programs include Netscape Navigator, Opera, and Mozilla; in addition, many residential ISPs like Earthlink and America Online provide their own proprietary browsers.

To retrieve information from the Internet, a [C-user] may type [a specific] address[, called a domain name,][13] of a website into the [address line of a] web browser ....

---

[13] .... *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 492–93 (2d Cir. 2000) [providing detailed explanation of domain names].

. . . .

[Alternatively,] ... a [C-user] can use [a "search engine"] to find information [by] ... typ[ing] in a word or words describing what is sought, and the

---

6. Vision Direct, Inc., also appealed the district court's decision and was a party to this consolidated appeal. *See* Docket No. 04–0446(CON). Following oral argument, however, 1–800 and Vision Direct filed a stipula-tion of dismissal with respect to all of 1–800's claims against Vision Direct. Accordingly, we do not address those claims or Vision Direct's arguments on appeal. *Id.*

search engine will identify websites and webpages that contain those words.

*1–800 Contacts*, 309 F.Supp.2d at 474–75 (internal citations and some footnotes omitted).

The district court further explained that [m]any [C-users] access the Internet with computers that use the Microsoft Windows operating system ("Windows"). Windows allows a [C-user] to work in numerous software applications simultaneously. In Windows, the background screen is called the "desktop." When a software program is launched, a "window" appears on the desktop, within which the functions of that program are displayed and operate. A [C-user] may open multiple windows simultaneously, allowing the [C-user] to launch and use more than one software application at the same time. Individual windows may be moved around the desktop, and because the computer screen is two-dimensional, one window may obscure another window, thus appearing to be "in front of" another window.

*Id.* at 475 (internal citations omitted). Some programs on a C-user's computer, such as a calendar or e-mail application, may cause windows to open on the C-user's desktop independently of any contemporaneous action by the C-user. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F.Supp.2d 734, 743 ¶ 53 (E.D.Mich. 2003); *see generally id.* at 740–43 (providing in-depth description of how software applications and web browsers operate in the Windows environment, and noting that Windows is currently used on approximately 95% of personal computers).

## II. The Challenged Conduct

The specific conduct at issue in this case has been described in detail by the district court, *see 1–800 Contacts*, 309 F.Supp.2d at 476–78, as well as other courts that have

addressed similar claims against WhenU, *see Wells Fargo*, 293 F.Supp.2d at 738–40, 743–46; *U–Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F.Supp.2d 723, 725–26 (E.D.Va. 2003). Accordingly, we recite only those facts relevant to this appeal.

WhenU provides a proprietary software called "SaveNow" without charge to individual C-users, usually as part of a bundle of software that the C-user voluntarily downloads from the internet. "Once installed, the SaveNow software requires no action by the [C-user] to activate its operations; instead, the SaveNow software responds to a [C-user]'s 'in-the-moment' activities by generating pop-up advertisement windows" that are relevant to those specific activities. *1–800 Contacts*, 309 F.Supp.2d at 477. To deliver contextually relevant advertising to C-users, the SaveNow software employs an internal directory comprising "approximately 32,000 [website addresses] and [address] fragments, 29,000 search terms and 1,200 keyword algorithms," *Wells Fargo*, 293 F.Supp.2d at 743 ¶ 58, that correlate with particular consumer interests to screen the words a C-user types into a web browser or search engine or that appear within the internet sites a C-user visits.

When the SaveNow software recognizes a term, it randomly selects an advertisement from the corresponding product or service category to deliver to the C-user's computer screen at roughly the same time the website or search result sought by the C-user appears. As the district court explained,

The SaveNow software generates at least three kinds of ads—an ad may be a small 'pop-up' ... [that appears] in the bottom right-hand corner of a [C-user]'s screen; it may be a 'pop-under' advertisement that appears behind the webpage the [C-user] initially visited; or it may be a 'panoramic' ad[ ] that stretches

across the bottom of the [C-user]'s computer screen.

*1–800 Contacts,* 309 F.Supp.2d at 478. Each type of ad appears in a window that is separate from the particular website or search-results page the C-user has accessed. *Id.* In addition, a label stating "A WhenU Offer—click ? for info." appears in the window frame surrounding the ad, together with a button on the top right of the window frame marked "?" that, when clicked by the C-user, displays a new window containing information about WhenU and its ads,[7] as well as instructions for uninstalling the resident SaveNow software. *Id.* at 478 nn.22 & 23.

> Usually there is a "few-second" delay between the moment a user accesses a website, and the point at which a Save-Now pop-up advertisement appears on the [C-user]'s screen.

> If a SaveNow user who has accessed the 1–800 Contacts website and has received a WhenU.com pop-up advertisement does not want to view the advertisement or the advertiser's website, the user can click on the visible portion of the [1–800] window ..., [which will move] the 1–800 Contacts website ... to the front of the screen display, with the pop-up ad moving behind the website window. Or, ... the [C-user] can close the pop-up website by clicking on its "X," or close, button. If the user clicks on the pop-up ad, the main browser window (containing the 1–800 Contacts website) will be navigated to the website

of the advertiser that was featured inside the pop-up advertisement.

*Id.* at 476–77 (internal citations omitted).

In its complaint, 1–800 alleges that WhenU's conduct infringes 1–800's trademarks, in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), by delivering advertisements of 1–800's competitors (*e.g.,* Vision Direct, Inc.) to C-users who have intentionally accessed 1–800's website. Although somewhat difficult to discern from the complaint, the allegations that pertain specifically to 1–800's trademark claims appear to be as follows: (1) WhenU's pop-up ads appear "on," "over," or "on top of" the 1–800 website without 1–800's authorization, and change its appearance; (2) as a result, the ads impermissibly "appear to be an integral and fully authorized part of [1–800's] website"; (3) in addition, WhenU's unauthorized pop-up ads "interfere with and disrupt the carefully designed display of content" on the website, thereby altering and hindering a C-user's access to 1–800's website; (4) WhenU is thereby "free-riding" and "trad[ing] upon the goodwill and substantial customer recognition associated with the 1–800 Contacts marks"; and (5) WhenU is using 1–800's trademarks in a manner that creates a likelihood of confusion.

Following an evidentiary hearing on 1–800's motion for a preliminary injunction, the district court held that 1–800 had demonstrated a likelihood of success on its trademark infringement claims and issued a preliminary injunction prohibiting

---

7. Specifically, C-users are informed that "[t]his offer is brought to you by WhenU.com, through the SaveNow service. Save-Now alerts you to offers and services at the moment when they are most relevant to you. SaveNow does not collect any personal information or browsing history from its users. Your privacy is 100 percent protect-

ed. The offers shown to you by SaveNow are not affiliated with the site you are visiting. For more about SaveNow, click here or e-mail information at WhenU.com. At WhenU, we are committed to putting you in control of your Internet experience." *1–800 Contacts,* 309 F.Supp.2d at 478 n. 22.

WhenU from utilizing 1–800's trademarks.[8] *1–800 Contacts*, 309 F.Supp.2d at 510. WhenU appeals the district court's decision.

## DISCUSSION

WhenU challenges the district court's finding that WhenU "uses" 1–800's trademarks within the meaning of the Lanham Act, 15 U.S.C. § 1127. *See 1–800 Contacts*, 309 F.Supp.2d at 489. In the alternative, WhenU argues that the district court erred in finding that WhenU's pop-up ads create a likelihood of both source confusion and "initial interest confusion," as to whether WhenU is "somehow associated with [1–800] or that [1–800] has consented to [WhenU's] use of the pop-up ad[s]." *Id.* at 494; *see id.* at 503–04. Because we agree with WhenU that it does not "use" 1–800's trademarks, we need not and do not address the issue of likelihood of confusion.

## I. Legal Standards

### A. *Preliminary Injunction*

To obtain a preliminary injunction,

a party ... must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir.2000). We review a district court's grant of a preliminary injunction for abuse of discretion. *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir.2001). Such abuse will be found if a district court rests its decision on a clearly erroneous finding of fact or makes an error of law. *Id.*

### B. *Lanham Act*

In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114,[9] or unregistered trademarks, pursuant to 15 U.S.C. § 1125(a)(1),[10] a plaintiff must es-

---

**8.** The district court's order stated, in relevant part:

> [WhenU is] preliminarily enjoined from: 1) including the 1–800 Contacts mark, and confusingly similar terms, as elements in the SaveNow software directory, and 2) displaying Plaintiff's mark "in the ... advertising of" Defendant Vision Direct's services, by causing Defendant Vision Direct's pop-up advertisements to appear when a computer user has made a specific choice to access or find Plaintiff's website by typing Plaintiff's mark into the URL bar of a web browser or into an Internet search engine. Within 30 days of the date of this Order, Defendants SHALL effect this injunction. *1–800 Contacts*, 309 F.Supp.2d at 510 (alteration in original).

**9.** 15 U.S.C. § 1114 provides, in relevant part,

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...

...,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

**10.** 15 U.S.C. § 1125 provides, in relevant part,

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

tablish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) "in connection with the sale ... or advertising of goods or services," 15 U.S.C. § 1114(1)(a), (5), without the plaintiff's consent. *See Time, Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 117 (2d Cir.1999); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). In addition, the plaintiff must show that defendant's use of that mark "is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]." 15 U.S.C. § 1125(a)(1)(A); *see also Estee Lauder Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1508–09 (2d Cir.1997); *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1075 (2d Cir.1993).

The only issue before us on appeal is whether the district court abused its discretion when it entered the preliminary injunction against WhenU; specifically, whether the district court erred in finding that 1–800 had demonstrated a likelihood of success on its trademark claims. As a result, the threshold of error required to reverse the district court's decision is higher than it would be were we reviewing a decision on 1–800's trademark claims themselves. That higher threshold is met in this case, however, because the district court erred as a matter of law in finding that WhenU "uses" 1–800's trademark. Because 1–800 cannot establish an essen-

tial element of its trademark claims, not only must the preliminary injunction be vacated, but 1–800's trademark infringement claims must be dismissed as well.

## II. "Use" Under the Lanham Act

The Lanham Act defines "use in commerce," in relevant part, as follows:

.... For purposes of this Chapter, a mark shall be deemed to be in use in commerce-

(1) on goods when-

(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and

(B) the goods are sold or transported in commerce, and

(2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce ....

15 U.S.C. § 1127.

In issuing the preliminary injunction, the district court held that WhenU

use[s] [1–800]'s mark in two ways. First, in causing pop-up advertisements for Defendant Vision Direct to appear when SaveNow users have specifically attempted to access [1–800]'s website— on which Plaintiff's trademark appears—[WhenU is] displaying Plaintiff's mark "in the .... advertising of" Defendant Vision Direct's services ... [and,

---

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

t]hus, ... [is] "using" Plaintiff's marks that appear on Plaintiff's website.

Second, Defendant WhenU.com includes Plaintiff's [website address], <www.1800contacts. com>, [which incorporates 1–800's trademark,] in the proprietary WhenU.com directory of terms that triggers pop-up advertisements on SaveNow users' computers. In so doing, Defendant WhenU.com "uses" Plaintiff's mark ... to advertise and publicize companies that are in direct competition with Plaintiff.

*1–800 Contacts*, 309 F.Supp.2d at 489.

Prior to the district court's decision, two other courts had addressed the issue of "use" as it applies to WhenU's specific activities and reached the opposite conclusion. In *Wells Fargo & Co. v. WhenU. com, Inc.*, 293 F.Supp.2d 734 (E.D.Mich. 2003), the district court denied Wells Fargo's motion for a preliminary injunction after finding that WhenU's inclusion of plaintiff Wells Fargo's trademarked website address in WhenU's proprietary directory of keywords was not "use" for purposes of the Lanham Act, and that WhenU did not alter or interfere with Wells Fargo's website in any manner. *Id.* at 757–61. The district court in *U–Haul International, Inc. v. WhenU.com, Inc.*, 279 F.Supp.2d 723 (E.D.Va.2003), employing a very similar analysis, granted summary judgment in favor of WhenU after concluding that WhenU's inclusion of U–Haul's trademarked website address in the SaveNow directory was not actionable because it was for a "pure machine-linking function" that was not "use" under the Lanham Act. *Id.* at 728 (internal quotation marks omitted).

In the case before us, the district court's consideration of these two comprehensive decisions on the precise issue at hand was confined to a footnote in which it cited the cases, summarized their holdings in parentheticals, and concluded, without discussion, that it "disagree[d] with, and [was] not bound by these findings." *1–800 Contacts*, 309 F.Supp.2d at 490 n. 43. Unlike the district court, we find the thorough analyses set forth in both *U–Haul* and *Wells Fargo* to be persuasive and compelling.

## A. The SaveNow Directory

■ The district court held that WhenU's inclusion of 1–800's website address in the SaveNow directory constitutes a prohibited "use" of 1–800's trademark. *Id.* at 489. We disagree.

At the outset, we note that WhenU does not "use" 1–800's trademark in the manner ordinarily at issue in an infringement claim: it does not "place" 1–800 trademarks on any goods or services in order to pass them off as emanating from or authorized by 1–800. *See U–Haul*, 279 F.Supp.2d at 728; *cf. L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 32–34 (1st Cir.1987); *Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 299 F.2d 33, 37 (2d Cir.1962). The fact is that WhenU does not reproduce or display 1–800's trademarks at all, nor does it cause the trademarks to be displayed to a C-user. Rather, WhenU reproduces 1–800's website address, «www.1800contacts. com.», which is similar, but not identical, to 1–800's 1–800CONTACTS trademark. *See 1–800 Contacts*, 309 F.Supp.2d at 478–79.

The district court found that the differences between 1–800's trademarks and the website address utilized by WhenU were insignificant because they were limited to the addition of the "www." and ".com" and the omission of the hyphen and a space. *See id.* We conclude that, to the contrary, the differences between the marks are quite significant because they transform 1–800's trademark—which is entitled to pro-

tection under the Lanham Act—into a word combination that functions more or less like a public key to 1–800's website.

Moreover, it is plain that WhenU is using 1–800's website address precisely because it is a website address, rather than because it bears any resemblance to 1–800's trademark, because the only place WhenU reproduces the address is in the SaveNow directory. Although the directory resides in the C-user's computer, it is inaccessible to both the C-user and the general public. *See id.* at 476 (noting that directory is scrambled to preclude access). Thus, the appearance of 1–800's website address in the directory does not create a possibility of visual confusion with 1–800's mark. More important, a WhenU pop-up ad cannot be triggered by a C-user's input of the 1–800 trademark or the appearance of that trademark on a webpage accessed by the c-user. Rather, in order for WhenU to capitalize on the fame and recognition of 1–800's trademark—the improper motivation both 1–800 and the district court ascribe to WhenU—it would have needed to put the actual trademark on the list.[11]

In contrast to some of its competitors, moreover, WhenU does not disclose the proprietary contents of the SaveNow directory to its advertising clients nor does it permit these clients to request or purchase specified keywords to add to the directory. *See GEICO v. Google, Inc.,* 330 F.Supp.2d 700, 703–04 (E.D.Va.2004) (distinguishing WhenU's conduct from defendants' practice of selling "keywords" to its advertising

clients), *claim dism'd,* Order, Dec. 15, 2004 (dismissing Lanham Act claim following bench trial on finding no likelihood of confusion); *see also U–Haul,* 279 F.Supp.2d at 728 (discussing other practices).[12]

A company's internal utilization of a trademark in a way that does not communicate it to the public is analogous to an individual's private thoughts about a trademark. Such conduct simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services. *See* 15 U.S.C. § 1127; *see also* Louis Altman, *4 Callmann on Unfair Competition, Trademarks and Monopolies* § 22:25 n.1 (4th ed. 2004) ("A fortiori, a defendant who does not sell, but merely uses internally within his own company, the trademarked product of another, is not a trademark infringer or unfair competitor by virtue of such use.").

Accordingly, we conclude that WhenU's inclusion of the 1–800 website address in its SaveNow directory does not infringe on 1–800's trademark.

### B. *The Pop-up Advertisements*

█ The primary issue to be resolved by this appeal is whether the placement of pop-up ads on a C-user's screen contemporaneously with either the 1–800 website or a list of search results obtained by the C-user's input of the 1–800 website address constitutes "use" under the Lanham Act,

---

11. This observation, however, is not intended to suggest that inclusion of a trademark in the directory would necessarily be an infringing "use." We express no view on this distinct issue.

12. We think it noteworthy that prior to filing its lawsuit against WhenU, 1–800 entered into agreements with WhenU competitors Gator and Yahoo! to have its own pop-up and banner ads delivered to C-users in response to the C-users' input of particular website addresses and keywords that were specified by 1–800. Included in the list 1–800 provided to Gator, for instance, were the website addresses for several of 1–800's competitors, including defendant-appellee Vision Direct, Coastal Contacts, and Lens Express.

15 U.S.C. §§ 1114(1), 1125(a). The district court reasoned that WhenU, by "causing pop-up advertisements for Defendant Vision Direct to appear when SaveNow users have specifically attempted to access [1–800]'s website, ... [is] displaying [1–800]'s mark in the ... advertising of ... Vision Direct's services." *1–800 Contacts*, 309 F.Supp.2d at 489.

The fatal flaw with this holding is that WhenU's pop-up ads do *not* display the 1–800 trademark. The district court's holding, however, appears to have been based on the court's acceptance of 1–800's claim that WhenU's pop-up ads appear "on" and affect 1–800's website. *See, e.g., id.* at 479 (stating that WhenU has "no relationship with the companies *on* whose websites the pop-up advertisements appear") (emphasis omitted) (emphasis added). As we explained above, the WhenU pop-up ads appear in a separate window that is prominently branded with the WhenU mark; they have absolutely no tangible effect on the appearance or functionality of the 1–800 website.

More important, the appearance of WhenU's pop-up ad is not contingent upon or related to 1–800's trademark, the trademark's appearance on 1–800's website, or the mark's similarity to 1–800's website address. Rather, the contemporaneous display of the ads and trademarks is the result of the happenstance that 1–800 chose to use a mark similar to its trademark as the address to its web page and to place its trademark on its website. The pop-up ad, which is triggered by the C-user's input of 1–800's website address, would appear even if 1–800's trademarks

were not displayed on its website. A pop-up ad could also appear if the C-user typed the 1–800 website address, not as an address, but as a search term in the browser's search engine, and then accessed 1–800's website by using the hyperlink that appeared in the list of search results.[13]

In addition, 1–800's website address is not the only term in the SaveNow directory that could trigger a Vision Direct ad to "pop up" on 1–800's website. For example, an ad could be triggered if a C-user's searched for "contacts" or "eye care," both terms contained in the directory, and then clicked on the listed hyperlink to 1–800's website.

Exemplifying the conceptual difficulty that inheres in this issue, the district court's decision suggests that the crux of WhenU's wrongdoing—and the primary basis for the district court's finding of "use"—is WhenU's alleged effort to capitalize on a C-user's specific attempt to access the 1–800 website. As the court explained it,

> WhenU.com is doing far more than merely "displaying" Plaintiff's mark. WhenU's advertisements are delivered to a SaveNow user when the user directly accesses Plaintiff's website—thus allowing Defendant Vision Direct to profit from the goodwill and reputation in Plaintiff's website that led the user to access Plaintiff's website in the first place.

*1–800 Contacts*, 309 F.Supp.2d at 490. Absent improper use of 1–800's trademark, however, such conduct does not violate the Lanham Act. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29, 121

---

**13.** The Second Circuit has defined the term "search engine" operationally:

> A search engine will find all web pages on the Internet with a particular word or phrase. Given the current state of search engine technology, that search will often

produce a list of hundreds of web sites through which the [C-user] must sort in order to find what he or she is looking for. *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir.2000).

S.Ct. 1255, 149 L.Ed.2d 164 (2001); *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 122, 59 S.Ct. 109, 83 L.Ed. 73 (1938) (holding that Kellogg's sharing in the goodwill of the unprotected "Shredded Wheat" market was "not unfair"); *see also* William P. Kratzke, *Normative Economic Analysis of Trademark Law*, 21 Memphis St. U.L.Rev. 199, 223 (1991) (criticizing importation into trademark law of "unjust enrichment" and "free riding" theories based on a trademark holder's goodwill). Indeed, it is routine for vendors to seek specific "product placement" in retail stores precisely to capitalize on their competitors' name recognition. For example, a drug store typically places its own store-brand generic products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less-expensive alternative. WhenU employs this same marketing strategy by informing C-users who have sought out a specific trademarked product about available coupons, discounts, or alternative products that may be of interest to them.

1–800 disputes this analogy by arguing that unlike a drugstore, only the 1–800 website is displayed when the pop-up ad appears. This response, however, ignores the fact that a C-user who has installed the SaveNow software receives WhenU pop-up ads in a myriad of contexts, the vast majority of which are unlikely to have anything to do with 1–800 or the C-user's input of the 1–800 website address.[14]

The cases relied on by 1–800 do not alter our analysis. As explained in detail by the court in *U–Haul*, they are all readily distinguishable because WhenU's conduct does not involve any of the activities those courts found to constitute "use." *U–Haul*, 279 F.Supp.2d at 728–29 (collecting cases). Significantly, WhenU's activities do not alter or affect 1–800's website in any way. Nor do they divert or misdirect C-users away from 1–800's website, or alter in any way the results a C-user will obtain when searching with the 1–800 trademark or website address. *Id.* at 728–29. *Compare Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1024 (9th Cir.2004) (holding that infringement could be based on defendant's insertion of unidentified banner ads on C-user's search-results page); *Brookfield Communications v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir.1999) (holding that defendant's use of trademarks in "metatags," invisible text within websites that search engines use for ranking results, constituted a "use in commerce" under the Lanham Act); *see generally Bihari v. Gross*, 119 F.Supp.2d 309 (S.D.N.Y. 2000) (discussing *Brookfield* and similar cases).[15]

In addition, unlike several other internet advertising companies, WhenU does not "sell" keyword trademarks to its customers or otherwise manipulate which category-related advertisement will pop up in response to any particular terms on the internal directory. *See, e.g., GEICO*, 330 F.Supp.2d at 703–04 (finding that Google's sale to advertisers of right to use specific

---

14. Indeed, although we do not address the district court's finding of a likelihood of confusion, we note that 1–800's claim that C-users will likely be confused into thinking that 1–800 has sponsored its competitor's pop-up ads is fairly incredulous given that C-users who have downloaded the SaveNow software receive numerous WhenU pop-up ads—each

displaying the WhenU brand—in varying contexts and for a broad range of products.

15. We note that in distinguishing cases such as *Brookfield, Playboy* and *Bihari*, we do not necessarily endorse their holdings. *See Playboy*, 354 F.3d at 1034–36 (Berzon, *C.J.*, concurring, noting disagreement with holding in *Brookfield* ).

trademarks as "keywords" to trigger their ads constituted "use in commerce"). In other words, WhenU does not link trademarks to any particular competitor's ads, and a customer cannot pay to have its pop-up ad appear on any specific website or in connection with any particular trademark. *See id.* at 704 (distinguishing WhenU's conduct on this basis). Instead, the Save-Now directory terms trigger categorical associations (e.g., www.1800Contacts. com might trigger the category of "eye care"), at which point, the software will randomly select one of the pop-up ads contained in the eye-care category to send to the C-user's desktop.

Perhaps because ultimately 1–800 is unable to explain precisely how WhenU "uses" its trademark, it resorts to bootstrapping a finding of "use" by alleging other elements of a trademark claim. For example, 1–800 invariably refers to WhenU's pop-up ads as "unauthorized" in an effort, it would seem, to establish by sheer force of repetition the element of unauthorized use of a trademark. Not surprisingly, 1–800 cites no legal authority for the proposition that advertisements, software applications, or any other visual image that can appear on a C-user's computer screen must be authorized by the owner of any website that will appear contemporaneously with that image. The fact is that WhenU does not need 1–800's authorization to display a separate window containing an ad any more than Corel would need authorization from Microsoft to display its WordPerfect word-processor in a window contemporaneously with a Word word-processing window. Moreover, contrary to 1–800's repeated admonitions, WhenU's pop-up ads *are* authorized—if unwittingly—by the C-user who has downloaded the SaveNow software.

1–800 also argues that WhenU's conduct is "use" because it is likely to confuse C-users as to the source of the ad. It buttresses this claim with a survey it submitted to the district court that purportedly demonstrates, *inter alia*, that (1) a majority of C-users believe that pop-up ads that appear *on* websites are sponsored by those websites, and (2) numerous C-users are unaware that they have downloaded the SaveNow software. 1–800 also relies on several cases in which the court seemingly based a finding of trademark "use" on the confusion such "use" was likely to cause. *See, e.g., Bihari,* 119 F.Supp.2d at 318 (holding that defendant's use of trademarks in metatags constituted a "use in commerce" under the Lanham Act in part because the hyperlinks "effectively act[ed] as a conduit, steering potential customers away from Bihari Interiors and toward its competitors"); *GEICO,* 330 F.Supp.2d at 703–04 (finding that Google's sale to advertisers of right to have specific trademarks trigger their ads was "use in commerce" because it created likelihood of confusion that Google had the trademark holder's authority to do so). Again, this rationale puts the cart before the horse. Not only are "use," "in commerce," and "likelihood of confusion" three distinct elements of a trademark infringement claim, but "use" must be decided as a threshold matter because, while any number of activities may be "in commerce" or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the "use" of a trademark. 15 U.S.C. § 1114; *see People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359, 364 (4th Cir.2001). Because 1–800 has failed to establish such "use," its trademark infringement claims fail.

### III. 1–800's Remaining Claims

In issuing the preliminary injunction, the district court expressly confined its findings in support of the injunction to 1–800's trademark infringement. According-

ly, 1–800's remaining claims, as to which we express no view, will be the subject of further proceedings on remand.

## CONCLUSION

For the foregoing reasons, we reverse the district court's entry of a preliminary injunction and remand with instructions to (1) dismiss with prejudice 1–800's trademark infringement claims against WhenU, and (2) proceed with 1–800's remaining claims.