**MERCK & CO., INC. and MSD Technology, L.P.,**
Plaintiffs,

v.

**MEDIPLAN HEALTH CONSULTING, INC., d/b/a/ Rxnorth.Com,**
Defendant.

**And Related Cases.**

Nos. 05 CIV. 3650(DC), 05 CIV. 3696(DC), 05 CIV. 3698(DC), 05 CIV. 3699(DC), 05 CIV. 3700, 05 CIV. 3701(DC).

United States District Court, S.D. New York.

May 24, 2006.

Fitzpatrick, Cella, Harper & Scinto by Robert L. Baechtold, Esq., Pasquale A. Razzano, Esq., Nina Shreve, Esq., Peter Shapiro, Esq., New York City, for Plaintiffs.

R. Kunstadt, P.C. by Robert M. Kunstadt, Esq., Ilaria Maggioni, Esq., New York City, for Mediplan Health Consulting, Inc.; North Pharmacy Inc., PPI Pivotal Partners Inc., and Universal Drug Store Ltd.

Rothwell, Figg, Ernst & Manbeck by Steven Lieberman, Esq., Minaksi Bhatt, Esq., Washington, DC, for Medcenter Canada Inc.

## *MEMORANDUM DECISION*

CHIN, District Judge.

On March 30, 2006, I issued an opinion (the "Opinion") granting in part and denying in part defendants' motions to dismiss the complaints in these six related cases. *See Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F.Supp.2d 402 (S.D.N.Y. 2006). Plaintiffs Merck & Co., Inc., and MSD Technology, L.P. (together, "Merck"), move for reconsideration of the portion of the Opinion that granted certain defendants' motions to dismiss the trademark infringement claims based on the "use" by defendants North Pharmacy Inc. and PPI Pivotal Partners Inc. (together, "CanadaPharmacy"), Universal Drug Store Ltd. ("Universal"), and MedCenter Canada Inc. ("MedCenter") of the trade-mark ZOCOR as a keyword for sponsored links on the Internet search engines Google and Yahoo.

Merck's motion for reconsideration is based principally on two grounds: first, this Court did not consider *Edina Realty, Inc. v. TheMLSonline.com*, Civ. No. 04–4371 (JRT/FLN), 2006 WL 737064 (D.Minn. Mar. 20, 2006), a decision filed after the motions to dismiss in these cases were briefed and just ten days before the Opinion was issued; and second, this Court purportedly overlooked the differences between a "keywording" situation and a "pop-up ad" situation. I consider both grounds.

### 1. *Edina Realty*

In *Edina Realty*, the plaintiff and the defendant were competing real estate brokerage firms. The plaintiff owned rights to the mark "Edina Realty." The defendant purchased sponsored links from Google and Yahoo triggered by keyword Internet searches for the words "Edina Realty" and similar terms. The United States District Court for the District of Minnesota held that this use of the Edina Realty mark was "use in commerce" under the Lanham Act. The court noted that "[w]hile not a conventional 'use in commerce,' defendant nevertheless uses the Edina Realty mark commercially. Defendant purchases search terms that include the Edina Realty mark to generate its sponsored link advertisement." 2006 WL 737064, at *3.

The *Edina Realty* decision does not cause me to change my conclusions on this issue. I recognize that the issue is a difficult one. In the Opinion, I already cited several decisions that ruled similarly to *Edina Realty*. *See Merck*, at —— n. 9, 2006 WL 800756, at *9 n. 9. I disagreed with the conclusion reached in these cases. Instead, I relied on, *inter alia*, and applied the Second Circuit's decision in *1–800 Con-*

*tacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir.2005). Notably, the court in *Edina Realty*, in recently denying a motion for reconsideration that was based in part on the Opinion in this case, recognized that Second Circuit law was inconsistent with its holding. *See Edina Realty, Inc. v. TheMSLOnline.com*, Civ. No. 04–4371 (JRT/FLN), 2006 WL 1314303, at *1 (D.Minn. May 11, 2006) (distinguishing the Opinion on grounds that it "applies controlling law of its circuit [*i.e.*, the Second Circuit] while identifying numerous well-reasoned opinions consistent with this Court's Order").

In *1–800 Contacts*, the Second Circuit emphasized that commercial use is not the equivalent of "use in commerce" for trademark purposes. It observed that, "while any number of activities may be 'in commerce' or create a likelihood of confusion, no such activity is actionable under the Lanham Act absent the 'use' of a trademark." 414 F.3d at 412. Trademark use "ordinarily" involves placing a trademark on goods or services to indicate that the goods or services emanate from or are authorized by the owner of the mark. *Id.* at 408.

Here, in the search engine context, defendants do not "place" the ZOCOR marks on goods, containers, displays, or associated documents, nor do they use the marks to indicate source or sponsorship. Rather, the marks are used only in the sense that a computer user's search of the keyword "Zocor" will trigger the display of sponsored links to defendants' websites. This internal use of the keyword "Zocor" is not use of the mark in the trademark sense; rather, this use is more akin to the product placement marketing strategy employed in retail stores, where, for example, a drug store places its generic products alongside similar national brand products to capitalize on the latter's name recognition. *See id.* at 411. The sponsored link marketing strategy is the electronic equivalent of product placement in a retail store.

For the reasons stated in the Opinion, I conclude that defendants' purchase from Google and Yahoo of the right to have their websites displayed as "sponsored links" when a computer user searches the keyword "Zocor" does not constitute trademark use. *See Merck*, at —— n. 9, 2006 WL 800756, at *9. Moreover, here defendants actually sell Zocor, albeit Zocor manufactured by Merck's Canadian affiliates. Hence, there was nothing improper—in a trademark sense—with their purchase of sponsored links tied to searches of the keyword "Zocor."

### 2. *Keywords v. Pop–Up Ads*

I did not overlook the differences between a "keyword" situation and a "pop-up ad" situation. There is a difference, but not, in my view, a meaningful one for these purposes.

In *1–800 Contacts*, the defendant WhenU used software that monitored a computer user's internet activity and delivered, in response to the activity, pop-up advertisement windows that appeared on top of, at the bottom of, over, or behind the webpage that the user was initially viewing. 414 F.3d at 404–05. The plaintiff, 1–800 Contacts, operated a website, and when computer users visited its website by typing in the website address, WhenU's pop-up ads appeared. *Id.* at 403–05, 410.

The Second Circuit rejected plaintiff's claim that this conduct constituted trademark infringement. In concluding that this did not constitute improper use of plaintiff's trademarks in violation of the Lanham Act, the court wrote:

> We hold that, as a matter of law, WhenU does not "use" 1–800's trademarks within the meaning of the Lanham Act, 15 U.S.C. § 1127, when it (1)

includes 1–800's website address, which is almost identical to 1–800's trademark, in an unpublished directory of terms that trigger delivery of WhenU's contextually relevant advertising to [computer users]; or (2) causes separate, branded pop-up ads to appear on a [computer user's] computer screen either above, below, or along the bottom edge of the 1–800 website window.

*Id.* at 403.

Here, defendants' use of the search engines is similar. The search engine companies included the keyword "Zocor" in their internal directories of keywords. When a computer user typed in the keyword Zocor, she would be offered, by virtue of the internal search engine processes, sponsored links to defendants' websites, in addition to the actual websites generated by the search engine program using neutral and objective criteria. This internal use of the keyword "Zocor" is not use of the ZOCOR mark to indicate source or sponsorship. It may be commercial use, in a general sense, but it is not trademark use. Indeed, if anything, keywording is less intrusive than pop-up ads as it involves no aggressive overlaying of an advertisement on top of a trademark owner's webpage.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Opinion, Merck's motion for reconsideration is denied.

SO ORDERED.