[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14658
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cv-80479-JIC

GEORGE EKINS,
an individual,

Plaintiff - Appellee,

v.

HARBOURSIDE FUNDING, LP,
a Florida limited partnership,
HARBOURSIDE FUNDING GP, LLC,
a Florida limited liability company,
FLORIDA REGIONAL CENTER, LLC,
a Florida limited liability company,

Defendants - Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 28, 2015)

Before JULIE CARNES, FAY, and EDMONDSON, Circuit Judges.


PER CURIAM:


Defendants Harbourside Funding, LP, Harbourside Funding GP, LLC, and Florida Regional Center, LLC appeal the district court's grant of summary judgment in favor of Plaintiff George Ekins, in Plaintiff's breach of contract case. In this state-law controlled, diversity action, no reversible error has been shown; we affirm.

Defendants were involved in financing a mixed-use real estate development project called "Harbourside Place," in Jupiter, Florida. Plaintiff entered into a written agreement (the "Consulting Agreement")[1] with Defendants to provide various services in connection with the development project. Defendants eventually stopped making payments to Plaintiff under the Consulting Agreement, and Plaintiff threatened to file suit.

---

[1] The written agreement is in fact titled "Summary of Principal Terms, 9/11/11, 'Harbourside Place.'" This single written agreement has been referred to by three different names throughout this proceeding: (1) as the "Service Contract" by the district court, (2) as the "Consulting Agreement" by Plaintiff, and (3) as the "Brokerage Agreement" by Defendants. Because the Settlement Agreement at issue in this appeal refers to the underlying written agreement as the "Consulting Agreement," we use that term.

2

Plaintiff and Defendants[2] then entered into a Settlement Agreement and General Release ("Settlement Agreement").  Briefly stated, Defendants agreed to pay Plaintiff a total of $900,000 (to be paid in six installments) in exchange for Plaintiff's release of Defendants from all claims arising out of the Consulting Agreement.

Defendants made the first installment payment to Plaintiff under the Settlement Agreement but failed to make further payment.  In accordance with the terms of the Settlement Agreement, Plaintiff provided written notice to Defendants of the payment default, allowed Defendants time to cure the default, and accelerated the payments due under the Settlement Agreement.  Plaintiff then filed this civil action seeking enforcement of the Settlement Agreement.

The district court granted Plaintiff's motion for summary judgment.  Then, following a hearing, the district court denied Defendants' motion for reconsideration and entered final judgment in favor of Plaintiff.

We review the district court's grant of summary judgment de novo, viewing the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party.  Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).

---

[2] Defendants dispute whether Harbourside Funding GP, LLC was in fact a party to the Settlement Agreement.  As discussed later in this opinion, we conclude that Harbourside Funding GP, LLC is bound by the terms of the Settlement Agreement.

3

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id.

On appeal, Defendants first argue that the Settlement Agreement is unenforceable under Fla. Stat. § 475.41 which, briefly stated, invalidates contracts for unlicensed brokerage services. Defendants allege that Plaintiff (who is not a Florida-licensed broker) provided brokerage services pursuant to the Consulting Agreement. As a result, Defendants contend that the Settlement Agreement constitutes indirect payment to Plaintiff for unlicensed brokerage services and, thus, is invalid under section 475.41.

"In rendering a decision based on state substantive law, a federal court must decide the case the way it appears the state's highest court would." Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 2001) (quotations omitted). Where the state's highest court has not spoken to an issue, we look to decisions of the state's intermediate appellate courts unless we are "convinced by other persuasive data that the highest court of the state would decide otherwise." Mesa Air Group, Inc. v. Delta Air Lines, Inc., 573 F.3d 1124, 1131 n.9 (11th Cir. 2009).

According to the Florida Supreme Court, when statutory language is "clear and unambiguous and conveys a clear and definite meaning, . . the statute must be

given its plain and obvious meaning." Donato v. AT&T, 767 So. 2d 1146, 1150 (Fla. 2000).

Under section 475.41, "[n]o contract for a commission or compensation for any act or service enumerated in § 475.01(3) is valid unless the broker or sales associate" was licensed properly under Florida law when they performed the act or service. Fla. Stat. § 475.41. Section 475.01(3) defines "operating" as a broker to mean "the commission of one or more acts described in this chapter as constituting or defining a broker." A "Broker" is defined, in pertinent part, as

> a person who, for another . . . takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another, or leases, or interest therein, including mineral rights, or who directs or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who receives, expects, or is promised any compensation or valuable consideration, directly or indirectly therefor . . . .

Fla. Stat. § 475.01(1)(a).

In determining the applicability of Fla. Stat. § 475.41 to this case, we stress that Plaintiff seeks to enforce the terms of the Settlement Agreement, not the underlying Consulting Agreement. Under Florida law, a settlement agreement is treated "as a distinct contract, separate from the parties' underlying agreements." See Lazy Flamingo, USA, Inc. v. Greenfield, 834 So. 2d 413, 414 (Fla. Ct. App.

5

2003).  Moreover, "settlements are highly favored and will be enforced whenever possible."  Robbie v. Miami, 469 So. 2d 1384, 1385 (Fla. 1985).  "[I]n the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls."  Emergency Assocs., P.A. v. Sassano, 664 So. 2d 1000, 1003 (Fla. Ct. App. 1995).

The parties entered into the Settlement Agreement "to settle and resolve all disputes between and among the Parties relative to the Consulting Agreement."  In furtherance of that goal, Defendants agreed to pay Plaintiff a set monetary amount in exchange for Plaintiff's release of Defendants from all claims "related to or arising out of the Consulting Agreement."  The Settlement Agreement provides expressly that it "is being entered into by the Parties as a compromise of disputed claims and is not for the payment of any particular fee payable to [Plaintiff] pursuant to the Consulting Agreement." (emphasis added).

Under the plain, unambiguous language of the Settlement Agreement, the payment to Plaintiff was to be made in exchange for Plaintiff's release of claims against Defendants, not in exchange for Plaintiff's services.  Because the

6

Settlement Agreement is no "contract for a commission or compensation for any act or service," the Agreement falls outside the scope of section 475.41.[3]

We reject Defendants' alternative argument that the Settlement Agreement is unenforceable against Harbourside Funding GP, LLC: Defendants contend that Harbourside Funding GP, LLC was no party to the Settlement Agreement. First, the Settlement Agreement was entered into expressly by "Harbourside Funding, LP, Harbourside Place GP, LLC, and Florida Regional Center, LLC and their respective affiliates and successors." (emphasis added). The Settlement Agreement also provides that it is "binding on, and shall inure to the benefit of, each of the Parties and their respective past, present and future . . . affiliates, owners, [and] members . . . ." That Harbourside Funding GP, LLC was the managing member of Harbourside Funding, L.P. when the Settlement Agreement was signed is undisputed.[4] Thus, as an "affiliate" and "member" of a named party to the Settlement Agreement, Harbourside Funding GP, LLC is bound by the terms of that Agreement.

---

[3] Because Plaintiff does not seek to enforce the underlying Consulting Agreement and because we conclude that the Settlement Agreement is not a contract covered by section 475.41, we need not determine, as a matter of Florida law, whether Plaintiff's contracted-for services under the Consulting Agreement constituted unlicensed brokerage services.

[4] Harbourside Funding GP, LLC in fact signed the Settlement Agreement in its capacity as Harbourside Funding, L.P.'s managing member.

7

Because we conclude that the Settlement Agreement is not invalid under section 475.41 and is enforceable against all Defendants, Plaintiff is entitled to summary judgment.[5]

AFFIRMED.

---

[5] In the district court, Defendants also argued that Plaintiff was unentitled to summary judgment because Plaintiff stood *in pari delicto* with Defendants.  Because Defendants have not raised this argument on appeal, it is abandoned.  See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008).