[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12717
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cv-00381-HLA-MCR

ROYAL CARIBBEAN CRUISES LTD.,

Plaintiff-Appellee,

versus

ROYALCARIBEAN.COM,
ROYALCARRIBEAN.COM,
CRUISE TRAFFIC, INC.,

Defendants-Appellants.
_____ _____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 27, 2017)

Before MARCUS, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Intervenor-Appellant Cruise Traffic, Inc. ("Cruise Traffic") and the

Defendants-Appellants, consisting of the domains royalcaribean.com and

royalcarribean.com ("the Domain Names," collectively with Cruise Traffic, "Appellants"), appeal from the district court's order denying Cruise Traffic's motion to set aside the clerk's entry of defaults and granting Plaintiff-Appellee Royal Caribbean Cruises Ltd. ("Royal Caribbean") a default judgment against the Domain Names.  In this in rem action, brought under the Anticybersquatting Consumer Protection Act,  15  U.S.C. § 1125(d) ("ACPA"), Royal Caribbean alleged that the Domain Names had been registered and used to wrongfully profit from the good will and reputation of Royal Caribbean.  On appeal, the Appellants assert that the district court lacked in rem jurisdiction under the ACPA to adjudicate the dispute, and the district court abused its discretion in not setting aside the defaults.[1]  After careful review, we affirm.

## A.

The relevant background is this.  Jai George, as owner of Cruise Traffic, purchased the Domain Names with Royal Caribbean's approval in 1999.  He was an authorized cruise agent for Royal Caribbean for five years, using the Domain Names with Royal Caribbean's knowledge and consent.  George and his various

---

[1] In the notice of appeal, the Appellants indicate that they also intend to appeal the district court's orders denying their two motions for post-judgment relief.  However, the Appellants do not raise any arguments about those orders in their briefs, and, thus, have abandoned any challenge to them.  N. Am. Med. Corp. v. Axiom Worldwide Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008) ("This circuit has consistently held that issues not raised on appeal are abandoned.").

2

companies, including Cruise Traffic, only used the Domain Names to promote and sell cruises for Royal Caribbean, while receiving a fee or commission.

When the relationship between George and Royal Caribbean terminated in 2005, the registrant for the Domain Names was switched to Bindu Joseph, George's sister-in-law, with a registrant address of Joseph's address in India. Joseph has lived in North Carolina since at least 2010 and uses the name Mary Joseph George in the United States. After Royal Caribbean ended its relationship with George and revoked his authorization to sell cruises on its behalf, George, through his companies, used third-party authorized agents to continue to sell and profit from the sale of Royal Caribbean cruises. Royal Caribbean contacted Cruise Traffic in November 2012, asking that it cease using the Domain Names and transfer the Domain Names to Royal Caribbean. Cruise Traffic's counsel responded in December 2012, acknowledging ownership of the Domain Names and denying any wrongdoing. After this action was filed, the registrant address for the Domain Names was changed to a North Carolina address.

In March 2015, Royal Caribbean filed a complaint for in rem injunctive relief against the Domain Names, pursuant to the ACPA, alleging bad faith registration and use of the Domain Names. Royal Caribbean asserted its belief that the district court lacked personal jurisdiction over Joseph, the Domain Names' registrant who purportedly lived in India, and that no other person would

3

be a proper defendant in this civil action, making in rem jurisdiction appropriate. The district court granted Royal Caribbean's motion for leave to effect service of process by email and overnight mail on Joseph and by publication. Royal Caribbean provided evidence that the notice mailed to Joseph's listed address in India was not delivered because the address was incorrect. When a timely response was not filed, the clerk entered defaults against the Domain Names. Royal Caribbean then moved for a default judgment against the Domain Names.

The next day, Cruise Traffic moved to set aside the entries of default, claiming it was the real party in interest as the owner of the Domain Names, and Royal Caribbean had known this for over a decade. Based on Royal Caribbean's knowledge, Cruise Traffic argued that the court lacked jurisdiction to proceed in rem under the ACPA. Cruise Traffic separately responded to Royal Caribbean's motion for a default judgment and moved to intervene. After holding a hearing, the district court granted Cruise Traffic's motion to intervene in part, but denied its motion to set aside the defaults and granted Royal Caribbean's motion for a default judgment. The court also directed the network administrator to transfer the Domain Names to Royal Caribbean within seven days of the order.

The court determined that it had in rem jurisdiction because the Domain Names' registrant was a proper ACPA defendant, and Royal Caribbean showed that the court was unable to obtain personal jurisdiction over the registrant. To

4

the extent Cruise Traffic argued that Royal Caribbean could obtain jurisdiction over Joseph because she actually resided in the United States, the court found that Joseph, in a bad faith attempt to avoid litigation, willfully represented that personal jurisdiction over her could not be had by listing an address in India as her contact information and failing to accurately update the registration for years. The court found no evidence that Royal Caribbean should have known that Cruise Traffic or another entity was still utilizing the Domain Names.

The court allowed intervention for the sole purpose of responding to the motion for a default judgment. As for Cruise Traffic's motion to set aside the defaults, the district court determined that the defaults were "culpable, due to bad faith and therefore willful." The court found that the record established that Cruise Traffic, George, and Joseph had not demonstrated the "clean hands" required to assert the equitable defenses on which they relied. Additionally, Royal Caribbean would be prejudiced if it were to set aside the defaults, as the Domain Names continued to divert customers from Royal Caribbean, causing loss of income. Finally, as for the motion for default judgment, the court determined that Royal Caribbean had shown that default judgment was proper.

The Appellants moved for reconsideration of the district court's order, and a stay pending appeal, both of which the district court denied. The Appellants also separately moved for relief from the judgment, asserting, for the first time,

that Cruise Traffic and George were the registrant's "licensees" or the de facto registrants of the Domain Names. The district court denied the motion, concluding that this relief was not warranted because the Appellants failed to present any information or arguments not available prior to the entry of the underlying judgment.  The appellants then filed this timely appeal.

B.

First, the district court did not err in determining that it had in rem jurisdiction over this action.  We review jurisdictional issues de novo, United States v. Lopez, 562 F.3d 1309, 1311 (11th Cir. 2009), with the burden of establishing jurisdiction on the party bringing the claim, Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005).

The ACPA provides that a person "shall be liable in a civil action by the owner of a mark" if he "has a bad faith intent to profit from that mark" and "registers, traffics in, or uses a domain name" that is identical or confusingly similar to the protected mark. 15 U.S.C. § 1125(d)(1)(A).  As to use of a domain name, "[a] person shall be liable . . . only if that person is the domain name registrant or that registrant's authorized licensee." Id. § 1125(d)(1)(D).  Section (d)(2) allows the owner of a mark to file an in rem civil action against a domain name if the domain name violates the owner's protected mark, and the court finds that the owner is (1) unable "to obtain in personam jurisdiction over a

6

person who would have been a defendant in a civil action under [§ 1125(d)(1)]," or (2) through diligence, was not able to find such a person. See id. § 1125(d)(2)(A). Diligence requires the mark's owner to attempt to find "a person who would have been a defendant" in an ACPA action by (1) sending notice of the violation and intent to proceed under the ACPA to the domain name's registrant at the postal and email address provided to the domain name registrar, and (2) publishing notice of the action after the action is filed. Id. § 1125(d)(2)(A). The ACPA's legislative history confirms that this is all that is required to exercise diligence. 145 Cong. Rec. S14696-03, 14714 (Nov. 17, 1999) ("Under the bill, a mark owner will be deemed to have exercised due diligence in trying to find a defendant if the mark owner sends notice of the alleged violation and intent to proceed to the domain name registrant at the postal and email address provided by the registrant to the registrar and publishes notice of the action as the court may direct promptly after filing the action.").

The Appellants argue that in rem jurisdiction is improper where a district court can obtain personal jurisdiction over a person who, in bad faith, registers, uses or traffics in a domain name. They say that Cruise Traffic and George qualified as persons who used the Domain Names, since Cruise Traffic and George were known to Royal Caribbean to use and control the Domain Names.

But the plain language of the ACPA provides that, to be liable for use of a domain name, the person must be the "registrant or that registrant's authorized licensee." See 15 U.S.C. § 1125(d)(1)(D); see also Bird v. Parsons, 289 F.3d 865, 881 (6th Cir. 2002) ("The only defendant that registered a domain name is Parsons, and liability for using a domain name can only exist for the registrant or that person's authorized licensee.  15 U.S.C. § 1125(d)(1)(D).") (emphasis in original).  Here, it is undisputed that Joseph was the domain name registrant at the relevant time.  Therefore, any use or control of the Domain Names by Cruise Traffic or George, by itself, did not transform them into persons "who would have been . . . defendant[s]" under § 1125(d)(2)(A) in an ACPA "use" action.

While the plain language of § 1125(d)(1)(D) provides that it only applies to ACPA use claims, George and Cruise Traffic would not have been defendants for registering the Domain Names either.  It is undisputed that the Domain Names were re-registered in Joseph's name, and we've held that "[t]he plain meaning of register includes a re-registration."  Jysk Bed'N Linen v. Dutta-Roy, 810 F.3d 767, 778 (11th Cir. 2015) (emphasis in original).  The Appellants maintain that George initially registered the Domain Names with Royal Caribbean's approval.  Thus, George and his companies would not have been proper defendants for an ACPA registration claim because the Domain Names were not initially registered

8

in bad faith.  Finally, Royal Caribbean did not claim, and the Appellants do not argue, that George or Cruise Traffic trafficked in the Domain Names.

As for the Appellants' argument that Royal Caribbean did not exercise due diligence in its attempt to locate a suitable defendant, as required by the statute, we are unpersuaded.  Indeed, Royal Caribbean did all that it was required by statute when it sent notice to Joseph via mail and email and published notice. See 15 U.S.C. § 1125(d); see also 145 Cong. Rec. S14696, 14714.

We also reject the Appellants' argument that Cruise Traffic qualified as a registrant or authorized licensee, under § 1125(d)(1)(D), because those terms encompass developers, launchers, and de facto registrants.  As the record reveals, the Appellants did not argue before the district court that Cruise Traffic was a de facto registrant or authorized licensee until they filed a motion for relief from judgment, pursuant to Fed. R. Civ. P. 59(e) and 60(b), even though they had the opportunity to do so prior to the default judgment.

We've consistently held that issues not raised in the district court will not be considered on appeal.  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).  "The reason for this prohibition is plain: as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions . . . that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose,

9

and competence of an appellate court." Id. Nevertheless, we may address an issue newly raised on appeal if: (1) the issue involves a pure question of law, and refusal to consider it would result in a miscarriage of justice; (2) the party had no opportunity to raise the issue in district court; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern. Id. at 1332.

Here, the district court did not have an opportunity to examine whether Cruise Traffic was a de facto registrant or authorized licensee -- this argument was raised for the first time in a motion filed pursuant to Rules 59(e) and 60(b), which cannot be used to "raise argument or present evidence that could have been raised prior to the entry of judgment." Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009). Furthermore, the Appellants have not argued that any of the Access Now exceptions apply. Instead, the Appellants say that, while they did not use the term "authorized licensee" in district court, they asserted that Cruise Traffic used and was the owner of the Domain Names, submitted evidence that Cruise Traffic was the user of the Domain Names, and described its arrangement with the registrant. But "[a] mere recitation of the underlying facts . . . is insufficient to preserve an argument; the argument itself must have been made below." Ledford v. Peeples, 657 F.3d 1222, 1258 (11th Cir. 2011). We, therefore, will not consider the Appellants' argument on appeal

10

that Cruise Traffic was Joseph's authorized licensee or a de facto registrant. For all of these reasons, we reject the Appellants' argument that the district court lacked in rem jurisdiction over this action.

We also find no merit to the Appellants' claim that the district court abused its discretion by denying Cruise Traffic's motion to set aside the defaults. A district court may set aside an entry of default "[f]or good cause." Fed. R. Civ. P. 55(c). In determining what constitutes "good cause," courts consider, among other things, factors such as whether the default was willful, whether the defaulting party would have a meritorious defense, and whether setting aside the default would result in prejudice to the non-defaulting party. See Compania Interamericana Export–Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951 (11th Cir.1996). We review the district court's denial of a motion to set aside default for abuse of discretion. In re Worldwide Web Sys., Inc., 328 F.3d 1291, 1295 (11th Cir. 2003). Discretion means that the district court may act within a "range of choice," and we will not disturb its decision "as long as it stays within that range and is not influenced by any mistake of law." Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1337 (11th Cir. 2005).

In denying Cruise Traffic's motion to set aside the defaults, the district court first determined that the defaults were willful and resulted from bad faith conduct. As the record shows, George changed the registration of the Domain

11

Names to his sister-in-law after Royal Caribbean terminated its relationship with him. Royal Caribbean attempted to mail notice of the action to Joseph's address as it was listed in the domain names registrar, but the notice was not delivered because the address was incorrect. Further, Joseph lived in North Carolina and used the name Mary Joseph George in the United States as early as 2010, but the registrant address was not changed to a North Carolina address until after Royal Caribbean filed this action in 2015.

The district court further determined that Cruise Traffic, George, and Joseph lacked clean hands, and, thus, could not assert equitable defenses. The Appellants do not argue that this conclusion was influenced by a mistake of law, but only that it is not supported by the evidence. See Betty K Agencies, Ltd., 432 F.3d at 1337. As we've detailed, however, the court's conclusion about the Appellants' willful default and bad faith has ample support in the record.

The district court also determined that Royal Caribbean would be prejudiced by the continued use of the Domain Names. This determination was supported by evidence that the Domain Names diverted customers attempting to book cruises directly through Royal Caribbean to third-party agents, to whom Royal Caribbean then paid a commission. In other words, Royal Caribbean incurred additional expenses due to the use of the Domain Names. On this

12

record, we cannot say that the district court abused its discretion by denying the

Appellants' motion to set aside the entries of default.

**AFFIRMED.**